UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-20354-CR-SMITH

UNITED STATES OF AMERICA

v.

ALBERTO ORIAN GONZALEZ-DELGADO,
a/k/a "Pana,"

        Defendant.
_____/

## DETENTION ORDER

On June 19, 2019, this Court held a hearing, pursuant to Title 18, U.S.C. § 3142(f), to determine whether the defendant, Alberto Orian Gonzalez-Delgado ("Gonzalez-Delgado"), should be detained prior to trial. Having considered the evidence presented at the pre-trial detention hearing, the pre-trial services report, arguments of counsel and the factors enumerated in Title 18, U.S.C. § 3142(g), this Court finds that no condition or combination of conditions will reasonably assure the appearance of Gonzalez-Delgado as required. Therefore, it is hereby ordered that Gonzalez-Delgado shall be detained prior to trial and until the conclusion thereof.

In accordance with the provisions of Title 18, U.S.C. § 3142(i)(1), this Court makes the following findings of fact and statement of reasons for the detention:

    1.    The charges against Gonzalez-Delgado are serious. Gonzalez-Delgado is charged in an eleven-count indictment with conspiracy to commit health care fraud and wire fraud, in violation of Title 18, United States Code, Section 1349 (Count 1); health care fraud, in violation of Title 18, United States Code, Section 1347 (Counts 2 through 10); and conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h) (Count 11).

2. The weight of the evidence against Gonzalez-Delgado is substantial. The government proffered the following evidence at the detention hearing:

   a. Gonzalez-Delgado was a leader in a conspiracy that caused Care Home Health Services, Tri-County Homecare, and Nu-Wave Home Health Care to bill Medicare for approximately $80.4 million in false and fraudulent claims between approximately October 2016 and May of 2019, of which Medicare paid approximately $53.4 million. These false and fraudulent claims consisted of claims for home health services purportedly provided to eligible Medicare beneficiaries. In reality, the home health treatments were never rendered. It was further established that Gonzalez-Delgado participated in a conspiracy to launder the proceeds of the fraud using accounts in the names of nominee owners and the names of shell corporations that were also in the names of nominee owners, which accounts he controlled with his co-conspirators.

   b. Gonzalez-Delgado was generally in charge of supervising billing to Medicare for the scheme.

   c. Gonzalez-Delgado was heard in an April 2, 2019 phone call to a co-defendant discussing a Medicare payment in the amount of $7,160.89 in connection with a Care Home Health Services initial billing submission and discussing the dates and claim codes that were submitted to Medicare from Care Home Health Services. In an April 8, 2019 phone call, Gonzalez-Delgado was heard discussing how long the co-conspirators should bill Medicare in association with Care Home Health Services, stating that they should move aggressively, and discussing the start of a replacement organization for when Care Home

        Health Services would shut down.

    d. Gonzalez-Delgado was observed on multiple occasions entering and exiting the location where billing records and cash related to the scheme were recovered.

3. The pertinent history and characteristics of Gonzalez-Delgado support pre-trial detention. Gonzalez-Delgado was a leader in a criminal organization that received $53.4 million from Medicare during the period of the allegedly fraudulent activity. Approximately $44 million of this amount has not been accounted for, potentially providing Gonzalez-Delgado with the resources to flee. Gonzalez-Delgado lives a transient lifestyle and does not have a stable residence or stable employment. Moreover, the scheme involved close coordination with individuals who traveled to and from Cuba, a country that does not have an extradition treaty with the United States, and directing those individuals to make themselves unavailable in the United States by remaining in Cuba after participating in the scheme. Gonzalez-Delgado took steps to hide his identity, including by the use of aliases and nominee owners to effectuate the scheme.

9. Based on the substantial weight of the evidence against Gonzalez-Delgado; Gonzalez-Delgado's lack of a stable residence and stable employment; Gonzalez-Delgado's connections to Cuba; Gonzalez-Delgado's potential access to $44 million of unaccounted-for funds; and Gonzalez-Delgado's use of aliases, the Court finds by a preponderance of the evidence, that Gonzalez-Delgado poses a risk of flight. The Court further finds that there are no conditions or combination of conditions which will reasonably assure Gonzalez-Delgado's appearance as required.

Therefore, the Court hereby directs that:

    a. Gonzalez-Delgado be detained without bond;

b. Gonzalez-Delgado be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

c. Gonzalez-Delgado be afforded reasonable opportunity for private consultation with his counsel; and

d. On order of a court of the United States or on request of an attorney for the government, that the person in charge of the corrections facility in which Gonzalez-Delgado is confined, deliver him to a United States Marshal for the purpose of an appearance in connection with court proceedings.

DONE AND ORDERED at Miami, Florida this 25th day of June, 2019.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: United States District Judge Rodney Smith
U.S. Probation Office, Pretrial Services Unit
U.S. Marshals Service
Counsel of Record